GROSSBIER, Respondent, vs. CHICAGO, ST. PAUL, MINNE-
    APOLIS & OMAHA RAILWAY COMPANY, Appellant.
    [Two cases.]

*February 8—March 8, 1921.*

*Postoffice: Transportation of mail to and from trains: Duty of
railroad company to deliver mail in accessible place: Quasi-
contract: Requiring extra labor of mail contractor: Compen-
sation.*

1. A railroad company did not comply with postal regulations re-
   quiring it to place mail cars at points accessible to messengers
   or contractors for wagon service if the mail car was so
   situated that the use of a truck was necessary to transport the
   mail from the train to the postal wagons, a railroad platform
   making it impossible for wagons to back to the train.
2. A letter from the second assistant postmaster general to the
   railroad company as to delivery of mail from mail cars to
   wagons is *held* not to supersede postal regulations.
3. Where a mail contractor transporting mail between the post-
   office and trains carried the mail from the train to his wagons
   by truck under protest that such service should be performed
   by the railroad, but did not claim compensation for nearly a
   year and until he was told by an employee of the postoffice
   department that such service should be performed by the

railroad company, he was entitled to recover from the railroad company, such services not having been performed without expectation of pay on his part.

4. A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and is not in fact a contract, but an obligation which the law creates in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it.

5. Where the contractor transported the mail by truck from train to wagon on the refusal of the railroad company so to do, though the railroad company was obligated by postal regulations to perform such service, the contractor may recover from the railroad company on the theory that the latter was liable therefor under a *quasi*-contract.

APPEAL from a judgment of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Richard L. Kennedy, Donald Evans,* and *G. F. Dames,* all of St. Paul, Minnesota, and *Bundy & Wilcox* of Eau Claire, and oral argument by *Mr. Kennedy.*

For the respondent the cause was submitted on the brief of *P. A. & R. R. Williams* of Marshfield.

JONES, J.   In this case there are two causes of action to recover for work and labor and the use of a truck, performed and furnished, respectively, by plaintiff for the benefit of the defendant railway company.   The two causes of action are alike except that they cover different periods. From a judgment for plaintiff the defendant appeals.

The plaintiff was awarded a contract by the postal authorities for the transportation of the mails between the Marshfield postoffice and defendant company's trains in the city of Marshfield.   The relations of plaintiff with defendant were controlled by the postal regulations.

Defendant placed its mail cars at such a point that it was necessary for the mails to be carried on a truck across a

platform which separated plaintiff's wagon from direct access to the mail cars.  Plaintiff did not think it was his duty to do this work.  From the start he protested vigorously and had many discussions with the defendant's local agent, but the agent refused to provide the labor to do the work.  He notified the defendant company of the situation, and the company replied that plaintiff must furnish his own truck. As a result plaintiff continued to do the work and bought a truck.  The plaintiff continued to protest that it was not his duty, and finally became convinced that he was right, by the statement of some federal postoffice employee, some time in February, 1918, and then demanded pay of defendant. Plaintiff also performed services in transferring mails from car to car at defendant's station.

The postoffice regulations, introduced in evidence, so far as they concern this question are:

Sec. 1353.  "Railroad companies will be expected to place their mail cars at points accessible to mail messengers or contractors for wagon service.  If cars are not so placed the companies will be required to receive the mails from and, deliver them to the messengers or contractors at points accessible to the wagon of the messenger or contractor."

Sec. 1384, on page 634.  "Mail messengers shall receive the mail from and deliver it into the postoffice, mail cars, and on board steamboats when such cars or boats are accessible.  When cars or boats are not accessible, mail shall be delivered to the railroad or steamboat employees at nearest accessible point.  Service shall be performed in accordance with the schedules of arrivals and departures prescribed by the postmaster."

In a trial before a court and jury the jury found the damages upon a special verdict, the judge reserving to himself to decide upon the undisputed evidence the question of liability.  Upon the evidence the trial court concluded that plaintiff was entitled to recover for the transporting of the mails between the cars and wagon but not for transferring the mails from car to car, there being no proof that the latter was part of defendant's duties.  The trial court there-

fore apportioned the damages in accordance with the undisputed evidence and gave judgment in plaintiff's favor.

It is the first contention of the appellant that the service was not rendered for the benefit of the company and that it was the duty of the plaintiff to deliver the mail bags on the cars and that the cars were accessible within the meaning of the postal regulations. It is also claimed that the plaintiff might have used trucks in carrying the mail between the postoffice and the trains. The fallacy of this argument seems to us apparent, because the express language of the regulations is that the mail cars are to be placed at points accessible for "wagon service," and that if they are not so placed the company is required to receive the mails from and deliver them to the messengers at "points accessible to the wagon."

Appellant also relied somewhat on a letter from the second assistant postmaster general notifying the company that mail-messenger service had been authorized between the postoffice at Marshfield and the trains of the company. It is hardly claimed that this letter superseded the postal regulations. There is no evidence that this officer had authority to change the regulations of the department or to interpret them in a manner contrary to their plain meaning. We construe this letter merely as a notice announcing a change which had been made in the service.

The main argument of the appellant is based on three propositions, namely: "(1st) that plaintiff, when performing the work, did not expect compensation from the defendant; (2d) that the defendant did not expect to pay the plaintiff; and (3d) that neither party assumed the services were being rendered for the benefit of the defendant." The assumption that plaintiff did not expect pay for his services is hardly justified by the facts. It is true he did not make claim for compensation for nearly a year, but he rendered his services under protest from the first, claiming that they should be performed by defendant. He was uncertain as to his legal

rights, but it seems clear that he never waived them, and there is nothing in the proof to show that he did not expect compensation if it should be found that he was entitled to it. When he was advised by an employee of the postoffice department that the service should be performed by the defendant he promptly made his claim.

Nor is the claim that neither party assumed the services were being rendered for the benefit of the defendant justified by the proof. As already stated, the plaintiff steadily maintained that he was doing work which it was defendant's duty to perform. The defendant was soon informed of the situation and must be presumed to have known the regulations under which it was carrying the mails. It seems to us too clear for argument that both parties knew that the defendant was benefited by the services.

The claim that defendant did not expect to pay plaintiff for his work in its behalf may be well founded and it is the real basis of the argument of appellant's counsel that there was no contract, express or implied. Manifestly there was no express contract. For the contention that there was no implied contract appellant's counsel greatly rely on an Ohio case, *Columbus, H. V. & T. R. Co. v. Gaffney,* 65 Ohio St. 104, 61 N. E. 152. The suit was brought on express contract for service for six years and more. In some respects this case is very similar to the present one. But there are essential differences. In the Ohio case the court found that during the entire period the plaintiff supposed it was his duty under his contract to carry the mails in the manner claimed by the defendant and that there was no request by the company that plaintiff should perform the work in question; while in the instant case the agent of the company insisted that plaintiff was bound so to do. The case was decided on the ground that there was no meeting of the minds of the parties and hence no contract. One other case in which the facts are somewhat similar is cited by respondent's counsel, namely, *Blowers v. Southern Ry.* 74 S. C. 221, 54 S. E. 368. In this

case the plaintiff rendered the services supposing it was his duty to do so; the railroad company, knowing his mistake, received the benefit of the service and was held liable.

Under the old system of pleading, when a wide gulf existed between actions in contract and those in tort and when the pleader was bound at his peril to choose his form of action, there was much confusion in dealing with implied contracts. Situations frequently arose when there was no remedy in tort, when no express contract could be proved, and yet when justice required that there should be a remedy. Necessaries might be furnished to a wife by a third person under such circumstances that in justice the husband should pay for them. Necessaries might be furnished an insane person for which in justice he ought to pay. In these and other cases which might be mentioned actions could be brought in assumpsit without any regard to the consent of the defendant or the meeting of the minds of the parties. By a fiction it was held that the pleader might allege a promise to pay and under proper proof recover upon what was called a contract implied in law. Other terms, as constructive contracts and *quasi*-contracts, are now often used to designate the relation out of which an obligation may arise. As was said by Mr. Justice COLLIN in *Miller v. Schloss,* 218 N. Y. 400, 113 N. E. 337:

"A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex æquo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy."

The principle that an obligation may thus be imposed by law for the purpose of bringing about justice and without

any actual agreement of the parties is recognized by abundant authority. 13 Corp. Jur. 244; 3 Page, Contracts, §§ 1493 *et seq.;* 6 Ruling Case Law, 588; 1 Williston, Contracts, § 3; 9 Cyc. 243; *Wojahn v. Nat. Union Bank,* 144 Wis. 646, 666, 129 N. W. 1068.

In the instant case the plaintiff has rendered service which it was not his duty to perform but which should have been performed by defendant's employees. To the extent of the value of the work defendant has been benefited thereby. Defendant not only had knowledge of the service but its agent insisted that it be continued. In doing this work plaintiff was not a volunteer, nor was he acting officiously. So far as his relations with the railroad company were concerned he would have performed his full duty by leaving the mail bags on the station platform. But he was performing duties in which the public were interested, and under the circumstances he very properly continued to do more than his contract required. We consider that justice requires that the plaintiff receive compensation for his work, and that the expectation of defendant that it would not be required to pay therefor is not a defense.

*By the Court.*—Judgment affirmed.