YOUNKER BROTHERS, INC., Appellant, v. LOREN K. MEREDITH et al., Appellees.

No. 42257.

MARCH 6, 1934.

Gamble, Read & Howland, for appellant.

Lehmann, Hurlburt & Hossfeld, for appellees.

ALBERT, J.—Appellees were husband and wife, and maintained a household in the city of Des Moines. Appellant's petition was in two counts: the first asked judgment for goods, wares, and merchandise sold the appellees; the second count asked judgment in the same amount based on a cause of action or claim for goods, wares, and merchandise bought by the wife, Irene, which goods, wares, and merchandise constituted family necessaries. The appellee Irene defaulted, and judgment was entered against her accordingly. The appellee L. K. Meredith in effect filed a general denial to all the allegations of the appellant's petition.

In the trial of the case it developed that the method of bookkeeping of Younker Bros., in substance, was that on sale of

merchandise a sales slip system was used, and the first book of original entry was the day, or sales book, consisting of a loose-page system, and this was accompanied by a ledger made up from the day books. The loose-leaf day book system set out the date of the purchase, the number and character of the articles purchased, and the sales price. The ledger used set out the date of the sale and the amount, without setting out the merchandise sold.

The ledger was first offered in evidence and objection thereto was sustained, and we think rightly so, because of the fact that no articles of merchandise were specified and it was not the book of original entry. See, Fitzgerald v. McCarty, 55 Iowa 702, 8 N. W. 646; Way & Co. v. Cross, 95 Iowa 258, 63 N. W. 691. Later, however, the day book was offered and received in evidence. This was sufficient to establish the account.

Section 10459 of the Code provides:

"The reasonable and necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

The fact situation in the case, as developed in the evidence, was that two accounts were run with the appellees herein. One was a charge account against the husband individually, and the monthly statements on such account were sent to the husband at his office. Whatever was bought for the home was charged in a separate account, and monthly statements therefor were sent to the home of the appellee.

The account for which bills were forwarded to the husband at his office is not in controversy in this case. The real crux of the case is whether or not the appellant established a case against the husband for the merchandise that was charged to the home account. As to this account, if the provisions of the statute had been complied with, the husband would be liable under the aforesaid section of the statute. Under the testimony of the husband, this charge account had been running since about 1919, and bills on such account were sent to the house. Later this was changed, and the husband requested that his bills be sent to his office. He further says:

"Some few years back, at least three or four years, I became aware that Younker Brothers was running an account with Mrs. Meredith separate and apart from the one that I had with them."

He further says that in the spring of 1930, one Bolen, a representative of Younker Bros., called at his office and that he told Bolen that they would have to look to Mrs. Meredith for the payment of the bills that went to the house. He further testifies that at the home he saw some of these bills which were the basis of this action, and that:

"There were charge accounts being run by me or my family at stores similar to Younker Brothers for purchases of clothes for Mrs. Meredith, the children and myself. These bills were paid by me. There was a charge account at nearly every store in town. These bills were charged to me and I recognized them as being part of the family expense I paid."

The witness further says:

"None of the items sued on here were purchased by me at my instance or request, or were ever delivered to me. What bills I saw lying around the house were addressed to Mrs. L. K. Meredith, not to me."

On cross-examination he says:

"During the time I was living on Grand Avenue and up to the time that I separated from my wife I received other bills at my home from other stores for goods which were purchased by my wife and charged either to my account or hers. I paid all these other accounts which were made up of articles purchased by my wife from various other stores in town. These other accounts were charged to Mrs. L. K. Meredith. I couldn't tell how many of the Younker Brothers' bills I have seen at the home. They were seen only casually as I happened to pick them up, or see a Younker Brothers' bill, and some, I remember, I didn't open, just the envelope. I couldn't tell how many I have seen. I never examined any of these statements close enough to tell what the nature of the various charges thereon were."

He further testifies as to items shown by the account in controversy here:

"There are many things on these bills, pajamas, ladies' pajamas, necklaces and things of that kind I suppose were there (in the home). I saw them around, but whether they were all there or some place else * * * I couldn't say these were not around the

home from time to time because I had no particular description of them. There is nothing in here I could pick out and say was in the home, that I can see, I don't know about it. Of course, there are a lot of things there that were undoubtedly in the home.".

Under the above-quoted section of the statute, the husband in this case is responsible for the "reasonable and necessary expenses of the family." The appellee urges that under the record in the case the evidence is not sufficient to show that the merchandise purchased was for family necessaries and expenses. We have before us as exhibits the account setting out the individual items constituting the same. The appellee himself admits that he saw some of this merchandise around his household, and, while he was not able to identify the individual items, he closes his testimony with the general statement with reference thereto: "There are a lot of things there that were undoubtedly in the home." A review of the itemized statements shows that the items there set out were the usual items of household expenses of the ordinary household.

The witness Bolen testifies to conversations with the appellee at his office, in which it appears that legal action was proposed to be started on this account, and the appellee asked that Bolen tell his employer that he (Meredith) did not want an action brought because he appreciated the fact that he was responsible for his wife's obligation and that:

"He would see that our store would not suffer. I asked for some money on the house account, but Dr. Meredith kept telling me that he wanted Mrs. Meredith to pay our account. Nevertheless, in this conversation he said he appreciated the fact that if she did not pay this Younker Brothers account he knew he would have to and he might have to have some time to pay the account, but that he would take care of our obligation, he wasn't in any way trying to sidetrack it."

Under the record thus made, we think the court erred in directing a verdict for the appellee.—Reversed.

CLAUSSEN, C. J., and KINDIG, EVANS, and DONEGAN, JJ., concur.