CHRIS HANSEN, appellee, v. PETER KAPERONIS, appellant.

No. 48123.

(Reported in 55 N.W.2d 284)

OCTOBER 14, 1952.

Thos. J. Griffin, of Sioux City, for appellant.

M. M. Lothrop and M. E. Rawlings, both of Sioux City, for appellee.

SMITH, J.—Plaintiff, a general contractor and builder in

Sioux City, Iowa, remodeled a house for defendant during the fall of 1947. He brings this suit asking foreclosure of a mechanic's lien for an alleged balance due him therefor. He alleges a cost plus contract whereas defendant claims there was an agreed fixed price.

I. Were the decision to turn on that issue alone we would have no difficulty in upholding the decision of the trial court in plaintiff's favor.

The conceded absence of definite plans and specifications; the practically uncontradicted testimony that the original intention contemplated a job to take "a week at the most" and that due to frequent changes by defendant as to its scope it lasted several months; the fact that the original building permit was originally for only a $500 job; the fact that defendant only pleads plaintiff "estimated" the cost at "approximately" the amount which he now claims was an agreed price; and finally the fact that defendant has overpaid by $300 or $400 the amount he claims was an agreed price and makes no claim for a refund, all preponderantly support plaintiff's pleading and testimony that there was a cost plus and not a fixed price agreement.

II. But a more difficult problem faces us when we come to defendant's objections to the nineteen exhibits by which alone plaintiff attempts to prove the cost and the delivery of materials and labor upon which his own claimed compensation was computed.

There is shown us in the record only Exhibit 1 with a general signed stipulation that:

"All of the exhibits consist of statements of accounts or invoices showing various items of lumber, hardware, or other building materials, on regular statement forms bearing the heading 'Chris Hansen, Contractor and Builder'; and each such statement * * * also bears the written designation 'to Pete Kaperonis, 1917 Grandview.' Attached to each of these statements * * * are the delivery slips from lumber companies or other building material suppliers. These statements or invoices contain numbers for each item shown by and corresponding with the number on each delivery slip. Some of the exhibits have timecards for labor attached; some * * * are statements

* * * showing merchandise supplied out of the Chris Hansen warehouse; and some * * * show insurance and cost plus percentage for which appellee makes claim. None of the exhibits is a ledger sheet or book account or a copy thereof. None * * * contains any signature but the ,delivery slips attached thereto do in most instances bear an identifying initial or signature.

"Since all of the exhibits are in the same form, and particular reference, by way of illustration of procedure, has been made * * * to * * * Exhibit 1 and attachments thereto, that exhibit and said attachments are reproduced as a part of this record."

The nineteen exhibits were (without objection) offered en masse and objected to "as incompetent, irrelevant and immaterial, no proper foundation laid, and based entirely on hearsay testimony, or in part on hearsay testimony, so that the court couldn't reasonably separate the part which is hearsay from the part which is not. The objection goes to the competency of the testimony and the competency of the exhibits."

The first item on Exhibit 1 is $2.50 for "building permit", copy of which is attached. The second item simply says "Carlson-Dahlin Co. $20.54" and there is attached a statement "Chris Hansen Job Cost Account, Kaperonis in account with Carlson-Dahlin Co." for that amount.

Each of the succeeding twelve items merely recites "Spalding-Avery Lbr. Co." with an invoice number and amount, and there are attached Spalding-Avery Lumber Company "invoices" (referred to in testimony as "delivery slips or tickets") corresponding in number and amount with the several items of the statement. These slips describe the material for which charge is made. The last item of the statement is "Warehouse Stock, $1.66."

There is no showing in the record as to what part of the total charge on the nineteen exhibits is for material and what part is for labor, nor does it show what amount of material came out of plaintiff's warehouse and how much was furnished by other suppliers.

Plaintiff testifies: "We take delivery slips which are turned in by the men on the job which [who] are in charge and as we

get our invoices from the dealers they are compared and personally checked by myself in conjunction with the bookkeeper."

Plaintiff further says: "The bookkeeping is done under my personal supervision. I personally check the accounts and purchases against the delivery slips and that is the way I handled this particular project. Some materials I have in my own warehouse * * *. When materials are taken from our warehouse an invoice is made directly from the warehouse. We have no method of checking that except making out an invoice when we load out a said amount of material on the job and check to the job."

When asked if he personally checked items from the warehouse he replied: "It is very true, especially in a lot of cases, especially any small amount, naturally if I don't happen to be there somebody else will do it." He does not say what, if any, items he checked here. "Somebody else" never testified nor did plaintiff attempt to *verify* the items involved in this claim.

When it comes to proof of actual delivery of material to, and performance of labor on, the job, plaintiff's whole testimony rests on a presumption that his system was followed and that "the invoices, Exhibits 1 to 19, inclusive, would not have been issued if they had not tallied or dovetailed with the delivery slips." No one testifies the slips did tally with the material actually delivered or that the labor shown on the attached timecards was actually performed on the job. The unverified delivery slips and timecards are no proof in themselves as to the fact that the material and labor they describe was in fact delivered to and used on the job.

Plaintiff's foreman on the job, Sterling, testifies as to the system or custom under which they operated, but there is no testimony by him or anyone that when any of the material shown by these exhibits was delivered he checked it with the delivery slip and found it correct.

Some (but not all) of the delivery slips attached to Exhibit 1 have a blank place "Received the above material ————." About half of these are signed with illegible, unidentified initials, one each is signed by Mr. Sterling, Nels Pierson, and "———— Stevens." The rest are unsigned. These signers (except Sterling) were not produced and no one explains the undecipherable

initials or identifies the persons whose signatures they are supposed to represent.

Mr. Sterling, the only employee called, does testify that *"upon the basis"* of *his examination of the exhibits* "the *labor shown*" on them was performed on the project. His testimony was objected to as "conclusion" and "hearsay" and we are of the opinion the objection was good. The testimony was quite clearly based on a presumption of correctness from their system of operation and not from his personal knowledge and check of the material and labor as received and performed.

The same is true of plaintiff's own testimony. He admits his testimony as to material from the Spalding-Avery Company and other suppliers being used on the job is based on "his personal confidence in the integrity" of the suppliers. No one from Spalding-Avery or any of the others testified. Plaintiff says: "I assume when I see a delivery ticket that the foreman signed it." But the foreman (Sterling) signed but one of the twelve Spalding-Avery delivery tickets attached to Exhibit 1. There is no showing as to those attached to others of the nineteen exhibits except that the foreman admits he signed only about sixty per cent of them. At another time plaintiff testifies: "Exhibits 1 to 19 are invoices which I took to be true and I assumed that the material * * * went into the job. I also assumed that the foreman * * * reported the correct number of hours of labor on the job."

■ III. It is apparent the showing we have described does not meet our statutory requirements for making books of account admissible. Section 622.28, Code 1950 (I. C. A.) provides among other things that "the charges must also be verified by the party or clerk who made the entries, to the effect that they believe them just and true, *or a sufficient reason must be given why such verification is not made.*"

Workmen's slips have, it is true, been held admissible as books of account when "verified by the oaths of the parties making them." Emeny Auto Co. v. Neiderhauser, 175 Iowa 219, 221, 157 N.W. 143, 144. But there is no such verification of the slips or delivery tickets shown here. See language in Shea v. Biddle Improvement Co., 188 Iowa 952, 956, 176 N.W. 948.

Plaintiff relies upon the statement in Dalbey Bros. Lbr. Co.

v. Crispin, 234 Iowa 151, 158, 12 N.W.2d 277, 280:

"The original tickets and memoranda of the sale and purchase of the items in question were introduced in evidence. We hold that this evidence was admissible in support of the lien claim of the appellee lumber company. Tickets and memoranda of a like nature have been held admissible as proof of books of account. Younker Bros. v. Meredith, 217 Iowa 1130, 253 N.W. 58. See also Graham & Corry v. Work, 162 Iowa 383, 141 N.W. 428; Emeny Auto Co. v. Neiderhauser, 175 Iowa 219, 157 N.W. 143. Proof of similar accounts has been held to show delivery. Annotation 27 A. L. R. 1458, 1462."

The text of that statement should probably have been qualified or limited to prevent an inference that such "original tickets and memoranda of sale" were admissible without supporting proof. As defendant pertinently argues, "The slips of paper could not identify themselves." What the opinion really says is that being admitted they constituted proof of delivery. It refers not to the question of their admissibility but to their effect as evidence on that issue.

The cited reference to 27 A. L. R. 1458, 1462, is to an annotation (commencing page 1439) on the *Necessity of verification by one who furnishes data for book entries made by another having no personal knowledge of the transactions.*" (Italics supplied.) The reference is to Division III (commencing page 1453) "Minority or modified view that entries may be admitted without verification", particularly to subdivision "c" of same which covers "Inconvenience or probable futility of calling large number of original observers."

This annotation shows how impossible it would be under this record, according to even the "minority or modified view", to consider these exhibits as books of account, admissible under our statutes. The so-called delivery tickets were in most instances issued by third party suppliers and are unsigned and unverified. The statements to which they are attached purporting to come from plaintiff's office are unsigned and unverified. There is no showing that it would have been an "inconvenience" or "probably futile" to call those who issued the tickets and who checked the delivery under them.

1264

■ IV. Nor does the record make the slips attached to the exhibits admissible upon any theory of contemporaneous memoranda made in the usual course of business as a part of the transaction—the res gestae. See 32 C. J. S., Evidence, section 696, notes 3, 5, page 587.

This court seems to have affirmed the admissibility of such documents in proper cases. Ricker v. Davis, 160 Iowa 37, 42, 139 N.W. 1110; Iowa State Bank v. Novak, 97 Iowa 270, 272, 66 N.W. 186.

And as stated in 20 Am. Jur., Evidence, section 1043, note 12, page 882: "Memoranda made in the usual course of business, where they consist of reports of subordinates, are admissible * * * *where accompanied by the testimony of such subordinates that they represent truly what had transpired, combined with testimony of the person minuting the transactions that they were also truly noted.*" (Italics supplied.)

In annotation 125 Am. St. Rep. 842, cited by 20 Am. Jur., supra, it is said: "The admissibility of books, reports and the like in evidence on behalf of the person on whose behalf they were made is very largely governed by the rules in regard to the admissibility of books of account and the use of memoranda made at the time of the transaction." See 20 Am. Jur., Evidence, section 1043.

We cannot hold that documents or memoranda such as are shown here may be admitted without some supporting verification by the one who makes them or at least some showing of reason or necessity why such verification is not procured. We realize that the complexity of modern business has made necessary some relaxation of the strict common-law rules governing the admission in evidence of books of account and similar documents. Our own Code section 622.29 is probably the result of that situation. Courts have relaxed the former strictness in defining what constitutes "original entries." 20 Am. Jur., Evidence, section 1066; 32 C. J. S., Evidence, section 685-i(2), page 565.

But even while holding admissible as original, entries transcribed from temporary memoranda made by others, it is held there must be not only the suppletory oath of the one making the entry but that the one making the memorandum must be called

unless his absence is satisfactorily accounted for. 32 C. J. S., supra, page 566, subsection (c).

V. Defendant admits receiving from time to time the statements constituting the exhibits in question. He lived downstairs and there is persuasive testimony that he was on the job a considerable part of the time and gave orders as the work progressed. But the suit is not based on an account stated nor is estoppel pleaded if it be thought any element of estoppel was present. Plaintiff admits "I am not prepared to say whether Mr. Kaperonis signed any delivery slips."

VI. In Kossuth County State Bank v. Richardson, 141 Iowa 738, 741, 118 N.W. 906, 907, we said:

"Ordinarily a reversal upon hearing de novo terminates the litigation, the opinion indicating the character of decree to be entered; but, whenever essential to effectuate justice an appellate tribunal may remand to the trial court for such further proceedings as the circumstances of the particular case require. Kreuger v. Walker, 80 Iowa 733; Id., 94 Iowa 506; Byington v. Buckwalter, 7 Iowa 512."

Authorities are also cited from other jurisdictions. The principle is well established. See 5 C. J. S., Appeal and Error, section 1931 (page 1443, note 12, citing many cases); Dee v. Collins, 235 Iowa 22, 28, 29, 15 N.W.2d 883.

We think the present case one proper for the application of this rule as to the matters discussed in Divisions II, III, and IV hereof. It is apparent the trial court's decision was based on and treated the exhibits as a part of the record, thereby overruling defendant's objections thereto. For this reason the case is remanded for further proceedings concerning the cost of materials and labor used in performance of the cost plus contract and the amount if any due plaintiff.—Reversed and remanded.

MULRONEY, C. J., and GARFIELD, WENNERSTRUM, OLIVER, MANTZ, and THOMPSON, JJ., concur.

BLISS and HAYS, JJ., concur in the opinion, except they disapprove of the remanding for further proceedings.