Austin A. Shadle, appellant, v. Calvin Borrusch, appellee.

No. 51191.

(Reported in 125 N.W.2d 507)

DECEMBER 10, 1963.

Hellwege & Bergren, of Boone, for appellant.

Mahoney, Jordan, Statton & Smith, of Boone, for appellee.

GARFIELD, C. J.—This controversy between plaintiff, farm owner, and his tenant over harvesting and dividing the 1961 corn crop should never have found its way to the courts. It would seem that by the exercise of a little common sense the parties and their counsel could have avoided resort to the courts and saved the expense and long delay in the settlement of their differences.

The action is in equity by plaintiff, Shadle, to enjoin his farm tenant, Borrusch, from picking and dividing the 1961 corn crop in any other manner than as agreed. A temporary injunction as prayed was issued November 13, 1961. The case was not tried until May 3, 1962. The court then held obtaining the injunction was ill-advised and that upon a full hearing it could not be sustained. Judgment of $1368 was entered for defendant on his counterclaim for wrongful issuance of the injunction. Plaintiff has appealed.

Why the printed record was not filed until nearly 13 months after notice of appeal was filed, rather than within the 90 days provided by rule 342(a), R. C. P., does not appear.

Plaintiff owns a 160-acre farm in Boone County and lived in the dwelling on it. Defendant farmed the land during the 1961 season under a written lease. He lived four miles from plaintiff's farm. Fifty acres were in corn that year. The landlord was to receive as rent half of all grain raised on the farm, delivered to market by the tenant at the landlord's direction.

The lease also provided: "* * * all grains raised on said premises shall be cribbed and binned on the farm and divided by weight when sold * * *." Also, "The second party [tenant] covenants * * * to harvest all crops in proper season and failing to do so, the party of the first part [landlord] may * * * harvest said crops and charge the cost to the party of the second part."

On July 31, 1961, the parties met to settle some differences. At defendant's suggestion this supplemental agreement was written by plaintiff and signed by both parties: "The corn of 1961 crop to be divided by rows, pick 8 rows, skip 8 rows until field is all picked and tenant and landlord flip coin who starts with the east 8 rows. The landlord corn is to be picked and cribbed on the farm first by tenant."

On November 9, 1961, a coin was flipped to see which party took the east eight rows of corn. They went to defendant. Defendant's elevator was placed at plaintiff's crib on the farm. That afternoon defendant and Roswell Gibbons, whom the former had hired, started picking the corn with two pickers. Defendant started to pick at the east fence line corn that was to go to him and two men, also engaged by defendant, hauled the corn he picked to his home four miles distant. At defendant's direction Gibbons started on the next eight rows and was told to pick every other eight rows. One man hauled corn from Gibbons' picker to plaintiff's crib.

When plaintiff saw defendant was picking and removing corn before plaintiff's share was picked and cribbed he went to his lawyer who prepared and filed a petition in equity asking that defendant be enjoined from picking the corn in any other manner than agreed. Judge Uhlenhopp set a hearing for November 13 on the request for temporary injunction and issued an order restraining defendant until then from picking corn in a manner different from that provided in the quoted agreement. The order was served on defendant the next morning. When served with the order defendant stopped, and never resumed, picking corn on plaintiff's farm. Plaintiff had rented the farm to another tenant for the year commencing March 1, 1962.

Before starting to pick corn with the two pickers defendant did not reveal to plaintiff his plan for so doing. In the three

years preceding 1961 when defendant farmed plaintiff's land he did not use a second picker. Nor did plaintiff or his lawyer confer with defendant before the petition and the order of Judge Uhlenhopp were prepared and the order was served.

The hearing set for November 13 was held before Judge Schaupp. Plaintiff and his attorney were present. Defendant was present without counsel and offered no evidence. Judge Schaupp ordered a temporary injunction to issue restraining defendant from picking the corn then standing on plaintiff's land in any manner different from that provided in the quoted agreement, namely that each alternate eight rows shall be picked and cribbed on plaintiff's farm first. Plaintiff was required to post bond of $500.

Defendant's answer to plaintiff's petition alleged he fully complied with the written memorandum as to how the corn was to be picked. He filed a counterclaim alleging that because of the wrongful restraining order and temporary injunction defendant was unable to proceed with picking the corn, was delayed in sealing about 1000 bushels of corn at $1.14 per bushel, and because of the wind and inclement weather some of the corn dropped to the ground and will remain in the field.

Three days before the trial commenced on May 3, 1962, defendant amended his counterclaim by alleging 1200, rather than 1000, bushels of his corn remained in the field when the temporary injunction was issued and defendant could have received $1.14 per bushel for it by sealing it. The judgment for defendant on his counterclaim is based on a finding that defendant was prohibited by the restraining order and temporary injunction from picking his 1200 bushels, he could have sealed it for $1.14 a bushel and was entitled to recover from plaintiff $1368 accordingly.

At the trial it was shown plaintiff left the state December 13, 1961, and was gone about two months. When he left, the unpicked corn was covered with snow. When defendant stopped picking, the east 68 rows were picked and the west 140 rows were not picked. We understand some of the rows between the east 68 and the west 140 were picked and some left standing. A week before the trial, after the lease to defendant expired,

plaintiff engaged a picker to pick the unpicked rows. Some of it was picked before the trial. Plaintiff concedes he caused to be picked all standing corn either before or after the trial and says it was stored separately. Plaintiff testified he had to get some of the standing corn picked so the new tenant could farm the ground. He also said in effect he did not claim all the corn he caused to be picked.

I. The basis for defendant's counterclaim is the allegation that he was wrongfully prevented by the restraining order and temporary writ from proceeding to pick the corn and by reason thereof he is entitled to recover from plaintiff the sum he could have received by sealing, at $1.14 per bushel, his share of all corn standing in the field on November 10, 1961, after it was picked and cribbed. Findings to this effect also form the basis for the judgment on the counterclaim. Unless these findings can be upheld we think the judgment on the counterclaim cannot stand.

It is true defendant is entitled to so much of his share of corn as plaintiff caused to be picked or its value. We do not understand plaintiff denies his liability therefor. In any event, to permit him to appropriate a substantial part of defendant's share of the corn without accounting for its value would result in unjust enrichment of plaintiff.

Gard v. Razanskas, 248 Iowa 1333, 1336, 85 N.W.2d 612, 614, 65 A. L. R.2d 982, applies the doctrine of unjust enrichment in affirming a judgment in favor of a lessee with an option to purchase premises damaged by fire after the option was granted but before it was exercised. It was held it would unjustly enrich the optionors to permit them to keep the proceeds of the fire insurance and collect the amount agreed to be paid in exercising the option.

The Gard opinion quotes this from Restatement, Restitution, section 1: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." And this from the comment thereunder: "A person is unjustly enriched if the retention of the benefit would be unjust. A person obtains restitution when he is restored to the position

he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money."

Another statement of the doctrine of unjust enrichment which is frequently found is that a person should not be allowed to profit or enrich himself inequitably at another's expense. It is also stated that unjust enrichment of a person occurs when he retains money or benefits which in justice and equity belong to another. McCreary v. Shields, 333 Mich. 290, 52 N.W.2d 853, 855; Hummel v. Hummel, 133 Ohio St. 520, 14 N.E.2d 923, 926, 927; 46 Am. Jur., pages 99, 100; 43 Words and Phrases, Perm. Ed., page 272.

We have held a tenant's matured crop belongs to him, even after expiration of the lease, subject to the landlord's lien. Schulz v. Hoffman, 254 Iowa 868, 873, 118 N.W.2d 532, 535.

However, it does not follow from the fact plaintiff must account to defendant for the latter's share of the corn plaintiff caused to be picked that defendant is entitled to recover, as the trial court held, for his half of the corn left standing on November 10, 1961. As before indicated, we feel this depends upon whether the restraining order and temporary injunction, which were in substantially the same terms except in the matter of duration, prevented defendant from harvesting the rest of the crop or warranted his refusal so to do. We think this question must be answered in the negative.

The answer to this question is of some importance because there was less corn standing in the field in the spring than in the preceding fall. This is one of the few matters on which the parties agree, although no agreement is shown as to the amount of corn which dropped to the ground during the delay and the record does not show the amount. Plaintiff testified that the loss from droppage of corn left standing during the winter was as high as 25 percent on part of it—how much of it we do not know. Defendant said some spots would be worse than others but the loss would be more than five bushels per acre.

II. The restraining order and temporary writ did not enjoin defendant from picking the corn then standing except in a manner different from that to which the parties agreed in writing. There is no dispute as to the making or validity of the

agreement. As stated, it provided the corn was to be harvested by picking eight rows and skipping eight rows and that the landlord's share should be picked and cribbed on the farm first by the tenant. Notwithstanding the injunction defendant could have proceeded to pick and crib plaintiff's corn in the manner agreed upon. At one place in his testimony defendant admitted he knew this.

█ III. Since the record does not show the amount of corn plaintiff caused to be picked we have no way of fixing the amount of defendant's one-half share for which plaintiff must account. We regret the necessity of remanding the case to the district court for hearing evidence on this question and deciding it. It is hoped an agreement may be reached which will avoid taking further time of the court on this controversy. We have no doubt, however, of the propriety of such a remand even though this is an equity case and they ordinarily are not remanded except for decree pursuant to our opinion.

█ Dee v. Collins, 235 Iowa 22, 28, 15 N.W.2d 883, 887, states: "V. Since this case is in equity, it is reviewed de novo here. Rule 334, Iowa Rules of Civil Procedure. Ordinarily the trial de novo in this court of an equity case is final and there is no further trial in the court below unless for some special reason it is so ordered. Upon a reversal all that ordinarily remains to be done is the entry of a decree in harmony with our opinion. [citations] We have repeatedly held, however, that when essential to effectuate justice, an equity case may be remanded for such further proceedings as the circumstances may require. [citations] Our authority to remand an equity case for the taking of further testimony cannot be doubted." (Citation)

Hansen v. Kaperonis, 243 Iowa 1257, 1265, 55 N.W.2d 284, 288, and Ross v. Gordon, 252 Iowa 899, 906, 907, 109 N.W.2d 208, 212, are to like effect.

In Dee v. Collins the remand was for the purpose of hearing evidence the trial court erroneously declined to hear on the trial. Here judgment on the counterclaim is based on findings with which we cannot agree. Neither side offered evidence on the extent to which defendant is entitled to recover, viz., for so

much of his one-half share of the corn as plaintiff caused to be picked.

In Hansen v. Kaperonis, supra, a decree foreclosing a mechanic's lien was based on evidence we held inadmissible. Since competent evidence of the cost of labor and material used in performing the cost-plus contract was lacking, the cause was remanded for hearing further evidence and decision on this point.

In order that our present decision may be as complete as we are able to make it, we will say that if plaintiff cannot deliver the share of defendant's corn plaintiff caused to be picked, he is liable for the fair and reasonable market value thereof at Boone, Iowa, at the time it was picked, with interest therefrom at five percent per annum, less the credits hereinafter mentioned to which plaintiff is entitled.

As stated, the lease provided defendant was to harvest all crops and failing to do so, plaintiff may harvest them and charge the cost to defendant. The record does not show the cost to plaintiff of harvesting the corn. Some of it was picked after the trial. Defendant alleged he hired Gibbons to pick corn at $5 per acre. Plaintiff is entitled to credit at such price for the acres he caused to be picked, not to exceed, however, the sum he actually paid therefor.

The trial court allowed plaintiff credits which total $75 on two claims unrelated to the main controversy over the corn. Neither side questions this allowance of $75 and it is approved.

Costs in this court are to be equally divided.

The cause is reversed and remanded for further proceedings as to the amount of corn, or the value thereof, to which defendant is entitled, in accordance with this opinion.—Reversed and remanded with directions.

All JUSTICES concur.