Cathy K. LAWLIS and Cassandra R. Lawlis, a minor by her Guardian ad litem, Frank T. Scott, Plaintiffs-Respondents,

v.

David L. THOMPSON, Defendant-Appellant.

Supreme Court

*No. 85–1386. Argued February 6, 1987.—Decided May 11, 1987.*

(Also reported in 405 N.W.2d 317.)

For the defendant-appellant there were briefs (in the court of appeals) by *Barbara A. Kluka* and *Phillips, Richards, Lepp, Mayew and Kluka, S.C.,* Kenosha, and oral argument by *Barbara A. Kluka.*

For the plaintiffs-respondents there was a brief (in the court of appeals) and oral argument by *Frank T. Scott,* Racine.

HEFFERNAN, CHIEF JUSTICE. This is an appeal from a judgment of the circuit court for Racine county, Dennis D. Costello, circuit judge, accepted on the certification of the court of appeals pursuant to Rule 809.61, Stats. This is an action for refund of moneys alleged to constitute unjust enrichment. At trial the plaintiff Cathy K. Lawlis prevailed.

The principal question posed on this appeal is whether a party to a nonmarital cohabitation, by reason of that cohabitation, is precluded, by legislative or public policy, from making a claim she might otherwise have for restitution, on the theory of unjust

enrichment from the other party to the cohabitation, for cash transfers made by her to the other party during the period of the nonmarital cohabitation.

Because we conclude that a party to a nonmarital cohabitation is not precluded from bringing such a claim, we affirm the circuit court for Racine county, which, after trial, upheld a jury finding made pursuant to Wis. JI—Civil 3028 (Contracts Implied in Law (Unjust Enrichment)) that the defendant, David L. Thompson (Thompson), was unjustly enriched and entered a judgment for the plaintiff, Cathy K. Lawlis (Lawlis).

The facts out of which this appeal arises are these:

Lawlis and Thompson lived together for about three and one-half years, from approximately April 1977 through August 1980. Lawlis had been married previously. Her husband had died in June 1976, leaving her an estate of approximately $150,000. During the time they lived together, Lawlis and Thompson moved more than once. They maintained a joint bank account in each town in which they lived. Thompson deposited his wages and other proceeds into the parties' joint account, while Lawlis deposited her interest earnings and her own and her daughter's social security benefits. The parties drew on these joint accounts to cover their living expenses. Lawlis was not employed during the time she lived with Thompson. During oral argument it was uncontested that the earnings of the parties were approximately equal during the period of their cohabitation.

During the course of the relationship, Lawlis also gave Thompson several large sums of money for major expenditures. Lawlis provided Thompson with money for a divorce settlement, a farm in Michigan, farm equipment, and a down payment on a house in

493

Burlington, Wisconsin, in which the parties lived. Thompson received a total of over $40,000 in such transactions. In addition, an accountant testified at trial that, during the course of the relationship, Thompson had spent about $69,000 more than he would have had available through his own earnings. Neither party alleges the existence of a contract or express agreement that Thompson would repay this money if the relationship ended, nor is it alleged that the parties executed any promissory notes in connection with the transactions.

When Lawlis and Thompson separated, Lawlis commenced this action for return of the money she had given Thompson. She proceeded on a theory of unjust enrichment. She also alleged that Thompson had received or had the use of money belonging to her minor daughter, and that it would be unjust for him to retain this money. A jury trial was held. The jury found that Lawlis had conferred a monetary benefit of $65,000 upon Thompson and that it would be unjust for him to retain the money. The jury found that Lawlis' daughter had not conferred a monetary benefit upon Thompson. The trial court entered judgment accordingly.

Thompson appealed, arguing that Wisconsin does not recognize a cohabitant's right to recovery from the other cohabitant upon termination of a cohabitation relationship, that the theory of unjust enrichment was inappropriate to a cohabitation situation, and that he had not been unjustly enriched in any event. Lawlis' daughter did not appeal the jury's verdict on her claim. On June 11, 1986, the court of appeals certified the case to this court, noting that the case "appears to be one of first impression in this state insofar as Lawlis' claim is not for payment for services rendered

but is for return of extraordinary moneys actually forwarded to Thompson for his exclusive use and benefit."

The defendant, Thompson, states in the conclusion to his brief:

"Unmarried cohabitants in Wisconsin do not have, and should not have, any rights resembling marital rights when their relationship terminates. Public policy and morality require that this be the case. Lawlis and Thompson had no agreement, express or implied, as to the sharing, accumulation or division of the assets acquired during their cohabitation. They entered a relationship which the law does not recognize, and therefore neither can expect to assert rights arising out of the relationship.

"Further, Lawlis should not be permitted to circumvent the law and recover under a theory of unjust enrichment. For Lawlis to seek and obtain equity flies in the face of this state's public commitment to marriage and the family. Absent agreement between cohabiting parties which might be enforced in a court of law, parties to this type of relationship should resolve the termination of the relationship and any division of assets themselves.

"For these reasons, appellant asks this Court to reverse the judgment of the trial court and to direct that an order be entered dismissing the plaintiff's complaint."

Putting aside for the moment a subsidiary question urged by Thompson—the sufficiency of the evidence—only a question of law is presented. That question is whether a party to a nonmarital cohabitational relationship is precluded from obtaining refund

(restitution) of significant sums of money given the other party solely because of an asserted rule or policy that prohibits a cause of action for unjust enrichment against the other cohabitant. Because this is a question of law, this court may make the decision without deference to any decision of the circuit court or, in an appropriate case, a decision of the court of appeals.

Despite the fact that Thompson appears principally to rely on the public-policy aspects of allowing recovery under these nonmarital circumstances, he also asserts, particularly at oral argument, that, in any event, irrespective of the "meretricious" nature of the relationship, the facts here do not give rise to a claim for unjust enrichment. That position is not clearly delineated, but we elect to explore that argument before addressing any public-policy arguments that would preclude recovery.

One possible defense to restitution was eliminated by the concession at oral argument that no instruction was sought by defense counsel at trial in respect to whether the sums transferred to Thompson were a gift. Thus, the question of whether Lawlis made gifts of money to Thompson is not raisable on this appeal.

Unjust enrichment, the question submitted to the jury, is a well-recognized and long-accepted theory in Wisconsin jurisprudence. In *Nelson v. Preston,* 262 Wis. 547, 55 N.W.2d 918 (1952), this court discussed the nature of the allegations and the proof required to sustain a cause of action for unjust enrichment. That court, relying on *Dunnebacke Co. v. Pittman,* 216 Wis. 305, 257 N.W. 30 (1934), stated at 262 Wis. 550 that:

> "[T]he essential elements of quasi contract entitling one to judgment for unjust enrichment are:

"1. A benefit conferred upon the defendant by the plaintiff;

"2. Appreciation by the defendant of the fact of such benefit;

"3. Acceptance and retention by the defendant of such benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof."

The jury instruction utilized herein (Wis. JI—Civil 3028) cites *Nelson,* and its language is taken almost verbatim from that case. The comment appended to the instruction points out that the doctrine of quasi contract for unjust enrichment has been a part of Wisconsin law since 1844 (*Rogers v. Bradford,* 1 Pinney Wis. 418 (1844)).

The doctrine of quasi contract was restated in *Watts v. Watts,* 137 Wis. 2d 506 (at pages 530, 531, citing *Puttkammer v. Minth,* 83 Wis. 2d 686, 689, 266 N.W.2d 361 (1978)), and in Wis. JI—Civil 3028 (1981).

All of the Wisconsin cases are founded upon the premise that the obligation to make restitution arises not from any representation or promise, but rather upon the circumstances which create a duty to make restitution. *Grossbier v. C. St. P. M. & O. R. Co.,* 173 Wis. 503, 508, 181 N.W. 746 (1921), points out, quoting *Miller v. Schloss,* 218 N.Y. 400, 113 N.E. 337:

"'In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another. Duty, and not a

497

promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy.'"

The above is reiterated with approval in *Nelson,* 262 Wis. at 553.

The nature of the cause of action for unjust enrichment is further explained in *Arjay Investment Co. v. Kohlmetz,* 9 Wis. 2d 535, 538, 101 N.W.2d 700 (1960), wherein it is stated, "actions on the theory of quasi contracts ... are legal actions ruled by equitable principles ...." *Arjay,* 9 Wis. 2d at 539, held that it was the duty of an unjustly enriched person to return the property—"not his promise, agreement, or intention"—which is the basis for recovery under a theory of unjust enrichment.

Thus, the protestations of Thompson that there was no understanding or promise in respect to the moneys transferred to him is, under the theory of unjust enrichment, irrelevant. Thompson asserts that only by agreement can there be a duty to make restitution where the parties are cohabiting in a nonmarital relationship. As the above decisions demonstrate, the making of an agreement is a concept entirely foreign to the quasi-contract concept of unjust enrichment and restitution. No agreement is needed.

The jurisprudence of unjust enrichment in Wisconsin is consistent with that found in the recognized treatises and encyclopedias. *See,* Restatement of Restitution, Unjust Enrichment, sec. 1, pp. 12–13; 66 Am. Jur. 2d, Restitution and Implied Contracts, Unjust Enrichment, sec. 3 (1973).

498

It is apparent that the jury was properly instructed on the question of unjust enrichment in accordance with the principles long accepted by this court.[1]

The jury unanimously responded to the questions submitted, finding that the plaintiff, Cathy Lawlis, conferred a monetary benefit upon defendant, Thompson, and that benefits were conferred upon Thompson under such circumstances that it would be inequitable for the defendant to retain the benefits without repaying the value. It determined that value to be $65,000.

Thus, we are satisfied that, were this a mine-run, unjust-enrichment case, the law was properly applied

---

[1]The instruction was as follows:

"This case involves a claim based upon alleged unjust enrichment. A claim of unjust enrichment does not arise out of an agreement entered into by the parties, but, rather, depends on the law that, as between the parties a person, unjustly enriched by the conduct or efforts of the other, must pay for the benefit conferred or return it.

"The essential elements of unjust enrichment are, one, a benefit conferred upon the defendant by the plaintiff; two, knowledge or appreciation of the benefit by the defendant; and, three, acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.

"It is not necessary to prove that the recipient of the benefit was at fault or guilty of wrongdoing in any way. But it must be established that as between the parties, it would be unjust or unconscionable for him to retain the benefit without repaying the reasonable value thereof.

"A benefit to the defendant may be services rendered, goods or merchandise received, improvements to real estate, money paid or money paid to someone else on his behalf. A loss to the plaintiff without an actual benefit to the defendant is not recoverable as an unjust enrichment.

"If a person declines in advance a benefit to be conferred by another, then the person conferring the benefit may not recover for unjust enrichment."

and the jury was properly instructed. The defendant, however, in addition to peripherally asserting that some agreement was necessary, claims that, in any event, to allow a recovery in this particular circumstance would be contrary to public policy and would be tantamount to encouraging nonmarital cohabitation. Thompson in fact insists that *Smith v. Smith*, 255 Wis. 96, 38 N.W.2d 12 (1949), is "on all fours" with this case and precludes recovery—and in fact no legal theory or contract would allow recovery by one nonmarital cohabiter against another. We conclude *Smith* does not rule this case.

It should be noted that in that case "[t]he prayer of the complaint is for an equitable division of the property ...." *Smith,* 255 Wis. 2d at 97. The court at that time refused to make that division because "[i]t is clear that whatever rights she seeks to enforce in this action arise solely by reason of the illegal relationship." *Smith,* 255 Wis. at 100.

*Smith* involved a cohabitation in which the woman initially thought the relationship was that of a common-law marriage. When she found that such relationship was not recognized in Wisconsin and when the man refused to marry her, she brought an action that paralleled a division of property upon the dissolution of a formalized marriage. This the court refused to tolerate, because to afford the remedy sought would be to equate the meretricious relationship with a legal one. She sought relief only because of the claimed relationship. The court specifically found that no other basis for her claim existed. This is quite unlike the instant situation, where the claim arises not out of the relationship *per se,* as in *Smith,* but rather out of unjust enrichment, where, in essence, the transferee of the funds is the beneficiary of moneys had and received. *Smith* specifically leaves

open the right to recover when facts show an obligation which has its origin in circumstances other than the relationship itself. As *Smith* said, in limiting the scope of its holding, "... there was no partnership or other joint venture antedating the marriage relationship, *or any other legal basis* giving rise to the claims which the plaintiff advances." (Emphasis supplied.) 255 Wis. 2d at 100. *Smith* does not rule this case. In fact, it foreshadows our holding. Here Lawlis alleges a recognized legal basis for her claim, unjust enrichment, which relies not at all upon the cohabitational relationship for its jurisprudential foundation. She seeks restitution of the large sums of money she transferred to Thompson. *Smith*, by its language, does not concern itself with a claim for unjust enrichment, which, by definition, arises out of the transfer of assets from one person to the other and the unjust refusal to make restitution.

Defendant also relies on the *Estate of Steffes*, 95 Wis. 2d 490, 290 N.W.2d 697 (1980). There the rule of *Smith* was clarified. *Steffes* pointed out that, where the claim is merely "incidental" to the relationship, the mere fact that the contracting parties at the same time cohabited does not vitiate the right to recover on an otherwise enforceable contract. *Steffes* furnishes the predicate for the holding in this case: That, where the illicit relationship was incidental and not the consideration for the transaction, the courts will afford a remedy. In the instant case, the relationship is incidental to the cause of action and the remedy sought. Under the language of both *Smith* and *Steffes*, Lawlis does not lose her right to bring an action against Thompson because she cohabited with him. That relationship was independent of the fact that Lawlis transferred large sums of money to Thompson

501

and independent of whether it would be unjust for him to retain the money. Thus, the cause of action asserted does not in any way depend upon the cohabitational relationship. Nor does this case involve the division of property accumulated during a marital-like relationship. Neither *Smith, Steffes,* nor *Slocum v. Hammond,* 346 N.W.2d 485 (Iowa 1984), also cited by Thompson, is controlling.[2]

We also point out that, in *Watts v. Watts,* 137 Wis. 2d 506 of even date herewith, this court has concluded that the family code does not *per se* exclude all judicial remedies for cohabiting persons who do not choose to marry (slip opinion at page 3). In *Watts v. Watts* (slip opinion at 20), we hold, consistent with the rationale of this decision:

> "[T]he Family Code does not preclude an unmarried cohabitant from asserting contract and property claims against the other party to the cohabitation. We further conclude that public policy does not necessarily preclude an unmarried cohabitant from asserting a contract claim against the other party to the cohabitation so long as the claim exists independently of the sexual relationship and is supported by separate consideration."

Thus, this court concludes, in this case and in *Watts,* that causes of action and judicial remedies are not necessarily barred because of the cohabitational relationship. As demonstrated above, under the circumstances of the instant case, the cause of action and

---

[2]The reliance upon *Slocum v. Hammond* is inappropriate, for *Slocum* involved not the return of sums advanced during the relationship, but a request for the payment of one-half the value of property acquired during the period of cohabitation. This is a property division sought to be justified by the relationship itself.

remedy of restitution sought by Cathy Lawlis is not precluded. The circuit court properly allowed the matter to proceed to verdict, and the jury was properly instructed under Wis. JI—Civil 3028.

The question remains, however, whether the jury verdict was supported by the evidence. While this court, in the usual case brought to it by petition for review, does not have reason to re-examine a sufficiency-of-evidence determination by the court of appeals, when the case is addressed by certification, that determination by the court of appeals is bypassed. Accordingly, we address the sufficiency of the evidence on this certified appeal rather than remanding to the court of appeals for a determination of the sufficiency of the evidence to support the verdict.

The question of unjust enrichment was submitted to the jury. The jury was asked whether Lawlis conferred a monetary benefit upon Thompson and whether it would be unjust for him to retain the benefit without repaying Lawlis for its value. The jury answered "yes" to each question. It then found that the value of the benefit that Lawlis conferred upon Thompson was $65,000. Because, as we have seen, Thompson may not challenge the appropriateness of allowing Lawlis to proceed on an unjust-enrichment theory, his only remaining challenge is to the sufficiency of the evidence supporting this verdict.

The jury's verdict is supported by the evidence. Thompson's argument that there is no evidence to support the fact that he was unjustly enriched is contrary to the facts found by the jury. One who challenges the sufficiency of the evidence supporting a jury verdict has a heavy burden.

> "An even heavier burden awaits the appellant who challenges the findings of fact reached by a

jury. Because of the paramount role the jury plays in our common law tradition, a jury's finding of fact is not easily overturned. In a civil case, a jury finding will not be overturned if there is *any* credible evidence that, under any reasonable view, supports the verdict and removes the question from the realm of conjecture and speculation. *See, e.g., Coryell v. Conn,* 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979). The jury is the ultimate arbiter of credibility, and the appellate court will view the evidence in the light most favorable to the verdict. *See, e.g., Roach v. Keane,* 73 Wis. 2d 524, 526, 243 N.W.2d 508, 515 (1976). It is the reviewing court's duty to search for credible evidence to sustain the jury's verdict. *See, e.g., Fehring v. Republic Insurance Co.,* 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). It will not search the record on appeal for evidence to sustain a verdict that the jury could have reached but did not. *Id.*" Walther, Grove, and Heffernan, *Appellate Practice and Procedure in Wisconsin,* sec. 3.56 (1986).

Credible evidence supports the jury's verdict. The jury heard testimony reciting the amounts of money that Lawlis transferred to Thompson and the purposes for which the money was given. An accountant stated the amount by which Thompson's expenditures exceeded his wages and earnings. The jury was free to believe that it was unjust for Thompson to retain the sums of money from Lawlis. In addition, the jury heard extensive testimony of accountants as to the various purchases and earnings of the parties and in respect to the change in Lawlis' net worth during the period of the relationship. The jury, on the basis of the evidence, was thus free to arrive at the figure of $65,000 as the amount by which Thompson had been unjustly enriched.

■ Many of the points raised by Thompson on this appeal are challenges to the jury's determination of the witnesses' credibility. He argues that "the record also contains evidence that Lawlis [also] benefited" from the purchases that Thompson made with the money she gave him, that the existence of conflicting testimony as to the amount by which Thompson had been unjustly enriched means the verdict was the product of speculation and is invalid, and that Thompson made economic and non-economic contributions to the parties' well-being which were not taken into account by the jury. These arguments ignore the fact that the jury, as factfinder, determines credibility and the weight to be given to the testimony it hears. The jury chose to believe, or attach greater weight to, the testimony that favored Lawlis. The fact that it did not believe Thompson or his witnesses is not grounds for vacation of the verdict. When the jury's verdict, as in this case, is supported by evidence which the jury could believe, this court will affirm.

We conclude that Cathy Lawlis' cause of action for restitution is not precluded by reason of the fact that the parties were in a cohabitational relationship. Because the jury was properly instructed on the question of unjust enrichment and because there was credible evidence to support the verdict on which the judgment was based, we affirm the judgment of the circuit court for Racine county.

*By the Court.*—Judgment affirmed.