Jerri SHOLD, Appellant,

v.

Terry GORO, Appellee.

No. 88–1804.

Supreme Court of Iowa.

Dec. 20, 1989.

Leslie Knock of Mershon, Snow & Knock, Cedar Falls, for appellant.

Samuel T. Beatty of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and ANDREASEN, JJ.

LARSON, Justice.

Jerri Shold and Terry Goro were lovers for several years and, for a while, lived together. Throughout the period of their relationship, Jerri advanced money to Terry for various purposes which, she claimed, were intended to be loans. After the rela-tionship ended, Jerri sued to recover these advances. The district court denied relief, and Jerri appealed. We reverse and remand.

Although unjust enrichment is generally an equitable matter, *Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 704 (Iowa 1982), this case was tried as a law action, and we will consider it as such on appeal. *See Beckman v. Carson*, 372 N.W.2d 203, 206 (Iowa 1985).

Jerri and Terry met in 1977 when Jerri was a student at the University of Northern Iowa. Terry was one of her instructors. In April of 1978, they began to have an affair. Both were married at the time, although Jerri was separated from her husband and was soon divorced.

In 1980, Terry took a job in Minneapolis, Minnesota, and moved there with his family. Shortly thereafter, Jerri obtained a job with the same company and moved to Minneapolis. Although Terry expressed a desire to leave his wife, he said he could not afford to do so. Jerri agreed to help. Each month Terry would let Jerri know the amount of his financial needs, and she would give him a check for that amount.

In 1982, Terry was transferred to Davenport, Iowa, and Jerri followed later the same year. In 1982, Jerri and Terry decided to go to California to look for jobs and ultimately moved there for a period of time. Terry's son, Todd, accompanied them. On their arrival in California, several bank accounts were established out of which Jerri paid the monthly expenses of the parties and drew checks payable to Terry as his needs arose. She testified that the separate accounts were used in order to keep track of her expenses. Terry, who was apparently a devoted record keeper, kept detailed accounts of all amounts received from Jerri during the period of their relationship. Ultimately, the parties returned to Iowa where Terry again became employed with the university. The parties continued to see each other for approximately two years, until Jerri was transferred to the Detroit, Michigan, area.

Jerri acknowledges that there was no specific agreement as to when the money would be repaid, because they did not know how long Terry would need the money. Most of the checks payable to Terry were marked "loan" or "LN," and Terry does not deny that they were initially intended to be loans. He does claim, however, that at least some of the loans had been forgiven.

The trial court, in denying recovery, relied primarily on our case of *Slocum v. Hammond*, 346 N.W.2d 485 (Iowa 1984). In *Slocum*, the plaintiff sought recovery under a theory of unjust enrichment, asking for an equitable division of assets acquired during the period of the parties' cohabitation.

In denying recovery we said that

[w]e do not perceive this doctrine [of unjust enrichment] to invest this court with a roving mandate to sort through terminated personal relationships in an attempt to nicely judge and balance the respective contributions of the parties. Plaintiff argues she "contributed all of her time, money and labor for seven years to help Tom Hammond build a house for the two of them, [thus] was entitled to recover half the value of the Hartford property, under the theory of unjust enrichment."

*Id.* at 491–92.

In the present case, the facts are quite different. Jerri's claim does not arise out of the relationship of the parties, but from loans made to Terry. Although the loans were intended to foster their relationship and, perhaps, to eventually encourage a more permanent arrangement, they retained their character as loans. They were clearly not accumulated property of cohabiting parties such as we found in *Slocum*. The practical effect of denying recovery under the facts of this case would be to permit a person to escape payment of a debt by simply entering into a romantic relationship with the creditor.

A similar case was presented in *Watts v. Watts*, 137 Wis.2d 506, 405 N.W.2d 303 (1987), in which the court stated:

We disagree with the circuit court's implicit conclusion that courts cannot or should not, without express authorization from the legislature, divide property between persons who have engaged in nonmarital cohabitation. Courts traditionally have settled contract and property disputes between unmarried persons, some of whom have cohabited. Nonmarital cohabitation does not render every agreement between the cohabiting parties illegal and does not automatically preclude one of the parties from seeking judicial relief, such as statutory or common law partition, damages for breach of express or implied contract, constructive trust and quantum meruit where the party alleges, and later proves, facts supporting the legal theory. The issue for the court in each case is whether the complaining party has set forth any legally cognizable claim.

*Id.* at 511–12, 405 N.W.2d at 305–06. Another Wisconsin case, *Lawlis v. Thompson*, 137 Wis.2d 490, 405 N.W.2d 317 (1987), is also on point. The parties had cohabited; the woman had assisted the man financially; and there was no express agreement for repayment. The court in *Lawlis* held that the plaintiff could sue for unjust enrichment despite the cohabitation, so long as the claim existed independently of the cohabitation and was supported by separate consideration. *Id.* at 502, 405 N.W.2d at 321.

Other jurisdictions have held that, where the benefit received was not based on the parties' relationship, it does not violate public policy to grant relief against a party unjustly enriched. *See Mason v. Rostad*, 476 A.2d 662 (D.C.1984); *Spafford v. Coats*, 118 Ill.App.3d 566, 74 Ill.Dec. 211, 455 N.E.2d 241 (1983); *Collins v. Davis*, 68 N.C.App. 588, 315 S.E.2d 759, *aff'd*, 312 N.C. 324, 321 S.E.2d 892 (1984).

In *Gard v. Razanskas*, 248 Iowa 1333, 1336, 85 N.W.2d 612, 614 (1957), we quoted with approval this language from the Restatement of Restitution:

A person who has been unjustly enriched at the expense of another is required to make restitution to the other. . . . A person is unjustly enriched if the retention of the benefit would be unjust. A person obtains restitution

when he is restored to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money.

*Accord Shadle v. Borrusch,* 255 Iowa 1122, 1126–27, 125 N.W.2d 507, 510 (1963).

In *Shadle,* we also stated:

Another statement of the doctrine of unjust enrichment which is frequently found is that a person should not be allowed to profit or enrich himself inequitably at another's expense. It is also stated that unjust enrichment of a person occurs when he retains money or benefits which in justice and equity belong to another.

*Id.* at 1127, 125 N.W.2d at 510.

We believe that Terry's retention of the loan proceeds without repayment would be unjust, and the district court, in denying relief, applied an erroneous interpretation of *Slocum.* We therefore reverse. Jerri is entitled to a judgment against Terry for all of the amounts advanced by her as loans, subject to any credits by reason of any forgiveness of indebtedness by Jerri or payments by Terry. Under the present record, we are unable to determine the exact amount to which Jerri is entitled and therefore remand to the district court for that purpose.

REVERSED AND REMANDED.