**Dee SLOCUM, Appellant,**

v.

**Tom Otis HAMMOND, Appellee.**

**No. 68703.**

Supreme Court of Iowa.

March 14, 1984.

---

**1.** This case was tried prior to the recently adopted Iowa Rules of Evidence, effective July 1, 1983.

Faith O'Reilly of Babich, Bennett & Nickerson, Des Moines, for appellant.

Robert L. White, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Plaintiff Dee Slocum filed a five-count petition against defendant Tom Otis Hammond, seeking under various theories to obtain one-half the value of property allegedly acquired during the period these parties cohabited. Trial court, expressing misgivings, submitted two law counts to a jury, which returned a verdict awarding plaintiff $65,500. The court then granted defendant's motion for judgment notwithstanding the verdict, and, on the same evidence, held for defendant on the three equi-ty counts. Plaintiff appeals. We affirm and remand.

The evidence disclosed that defendant, a maintenance worker for Waldinger Corporation, had built several houses. These included the Hartford, Iowa, home he lived in when his wife died in October 1970. Plaintiff attended a New Year's Eve party at this home on December 31, 1970. After that plaintiff and defendant often were together. When plaintiff's Chicago employment terminated, she invited defendant to accompany her on a Caribbean vacation that extended February through the first part of March 1971, with each paying his or her own expenses.

Plaintiff testified she rejected defendant's marriage proposal but took up residence in his Hartford home in May 1971. Defendant characterized the arrangement as one for mutual sexual services; he was to "buy the groceries"; she was to cook them, and she was free to lead her own life, which in fact she did. Plaintiff characterized the relationship as one in which she was "to fix him breakfast, and lunch and dinner, clean house and just a lot of wife duties, take care of him."

In the fall of 1971 defendant renewed his interest in a rural tract near Hartford that he had attempted to buy several times. Although plaintiff testified she participated in the new negotiations, this was denied by defendant. The sellers testified they never saw her during any phase of the transaction. It is uncontested that defendant borrowed the $4000 down payment for the ten and one-half acre tract, and that he had contemplated building another home for several years. At this point, however, plaintiff testified defendant asked her if she "wanted to be in on building a house" on the tract, and she responded that she did. Construction of a large house commenced in September 1971.

The final purchase payment of $2500 was made December 18, 1971. Plaintiff testified that was the day she "walked out" of defendant's Hartford home, and, although requested to do so by defendant, she refused to sign the mortgage or permit her

name to be on the deed. She testified she said "no" because "the seven months I would have donated to whatever I did out there was to his benefit. I was ready to walk away and forget it, and now it's a different story." Defendant signed the note and mortgage to complete the purchase, and the deed ran to him alone.

From Hartford plaintiff moved into a Des Moines apartment rented by her brother and sister-in-law, and later the three occupied a Des Moines house plaintiff owned. Plaintiff moved back into defendant's home in June 1972. She testified defendant prevailed upon her to return and work on the house. When asked what defendant had said or done to convince her half the house belonged to her, she replied:

> He told me he loved me. He always told me that it was as much mine as his. The labors that I put into it, the labors that he accepted from me ... for the work I did, he accepted that labor from me knowing that I was doing it half and half ....

Upon cross-examination plaintiff could name no one other than defendant to whom she had claimed any interest in the property. She testified "from '73 on it was definitely a claim that I—that I—What do I want to say? That I displayed." On deposition she had testified that what she did for defendant and what he did for her "was all part of the love and affection and friendship" that they "had at that time for each other."

Plaintiff again moved back to her Des Moines home in October 1972 and did not return until after Christmas the same year. At that time she moved into the new house although it was not then completed; nor was it completely finished when this trial took place in October 1981.

During all this time work had progressed on a large home on defendant's rural tract. In addition to defendant's labor, many of his fellow workers, relatives and friends assisted in the construction. These included John Light who, for the experience,

worked with the defendant almost every weekend from Thanksgiving 1971 until July 1974. Defendant borrowed various sums of money from a bank in the course of the construction, and also used $30,500 received from the sale of his Hartford home. In addition, he used a large quantity of material remaining from other houses he had constructed.

Plaintiff testified she assisted substantially in the construction of the house, a claim denied by defendant and all of his friends and co-workers on the construction site. Her brother testified he was unaware that she did much physical work on the project. This brother intermittently contributed labor over a three-to-four month period in the early stages of construction. Although he was paid nothing, he and his wife and child had lived with defendant in his Hartford home for several weeks in 1971 while the brother was unemployed. Plaintiff's uncle dug the basement, and gave a "little rebate" from his "normal rate."

The evidence disclosed plaintiff did much of the housekeeping and cooking following her return to the rural home in December 1972, although there was considerable testimony that she remained as defendant described her: a "free agent" who could and did "come and [go]" at will.[1] From January 1972 to January 1973 plaintiff took training that led to her becoming a licensed cosmetologist, an occupation she followed for a time. Other training permitted her to obtain a real estate license in May 1977, and she then followed that calling. She went to Chicago several times, and left the United States for a while. She entertained Mr. Miller, her former employer from Chicago, for about two weeks.

Plaintiff also asserted she contributed financially to the house payment by depositing monies in a co-owned checking account. The record reflects the accounts in question were defendant's, with plaintiff being an authorized signatory until 1974,

---

1. The transitory nature of the relationship of these parties may have been indicated by the words plaintiff inscribed in the cement drive: "Tom and Dee shack here."

when a joint account was instituted. Plaintiff had a separate savings account into which she deposited $900, the sale price of a Mustang car she owned before moving to Hartford; $27,000 she received from the sale of her Des Moines home; and certain real estate commissions.

In 1978 defendant alone signed the necessary documents to refinance the home for funds to purchase a Granada car for plaintiff. For insurance purposes the car was placed in defendant's name. Plaintiff "totaled out" this vehicle in a collision. Eleven hundred dollars of the insurance proceeds went into what was by that time a joint account; $4000 went into plaintiff's savings account. In November 1978, she transferred $10,000 from the latter account into the joint account. A check for $10,106 was issued on the joint account for a 1977 Continental that plaintiff used in her real estate business. This car was titled in her name. Plaintiff does not seriously contest defendant's computation that plaintiff deposited in the bank account, that both checked on, the sum of $24,792.46 (including the $10,000 transfer mentioned above), and that she used for her personal needs the sum of $33,423.04 (including the payment of $10,106 for the Continental).

Plaintiff was served a notice that terminated her occupancy of the house on November 23, 1979. In preparation for litigation, she obtained two appraisals of the home and premises. The appraisers fixed the value of the property in 1981 at $174,000 and $244,000, respectively. At time of trial there was less than $5000 in mortgage indebtedness against the real estate.

After these parties separated, plaintiff brought an action against defendant to dissolve a common-law marriage. Trial court filed a decree in that proceeding on February 20, 1980, holding there was neither an in praesenti intent to be married nor a public declaration sufficient to establish that the parties were husband and wife.

April 30, 1980, defendant was served with notice of this proceeding. Plaintiff

variously describes "division"[2] I of her petition as based on misrepresentation or implied contract resulting in a joint venture; count II pled the breach of an alleged oral contract. In count III she sought recovery on the doctrine of unjust enrichment, in count IV on an alleged resulting trust, and in count V on a constructive trust theory. In addition, on April 29, 1980, the same date this action was commenced, plaintiff filed a partition action for the division or sale of the real estate and undescribed personalty. Upon plaintiff's motion, these two cases were consolidated for trial by order entered September 19, 1980.

The law issues in the first two counts were submitted to the jury. Trial court overruled defendant's motions for directed verdict, although expressing doubt there was any mutuality of obligation, or any evidence showing an agreement to share the ownership of the home. The issues were submitted to the jury largely on plaintiff's requested instructions. Neither party lodged any exceptions to the instructions submitted.

The court's marshaling instruction informed the jury that in count I of her petition plaintiff claimed defendant made false representations to plaintiff, who was thereby induced to enter into a joint venture "for the purpose of living together, building the home and accumulating personal property." The same instruction informed the jury that plaintiff in count II claimed these parties made an oral contract in which she and defendant "agreed that they would live together, marry, and raise a family, [and] ... each would contribute labor and money for construction of their home"; that "she ... made reasonable efforts to perform all the stipulations, conditions and agreements included in said contract, but ... defendant has failed and refused ... to perform his contractual obligations."

Trial court further instructed the jury, without objection, that if they found plain-

---

**2.** Iowa procedure now indicates these are to be designated "counts," *see* Iowa R.Civ.P. 69(b), 79, and this designation will be used in this opinion.

tiff entitled to recover under one count she could not recover under the other. It is clear from the jury's response to interrogatories that its verdict for plaintiff was based on the count II oral contract.

Defendant's motion for judgment notwithstanding the verdict asserted there was no evidence of mutuality of agreement or mutuality of obligation between the parties; no evidence of any agreement between the parties relating to the rural residence; no evidence of a mutual right to control. Defendant alleged there was no evidence of a right in plaintiff to share any profits with respect to the residence, nor any evidence plaintiff had an obligation to share in any losses. Trial court's ruling pointed out that although the jury's verdict was based on count II of the petition, plaintiff failed to carry her burden to establish the existence and terms of an express oral contract. Accordingly, the court entered judgment for defendant and against the plaintiff. Responding to plaintiff's motion for enlargement of this ruling, trial court "enlarged" its ruling "to show that judgment notwithstanding is granted on all lettered paragraphs in said motion [for judgment notwithstanding the verdict]." [3]

Following the jury trial, trial court, on the basis of the evidence adduced and certain stipulations of the parties that did not materially modify that evidence, ruled against plaintiff on the three equity claims in counts III through V of plaintiff's petition.

Appealing, plaintiff asserts she is entitled to recover under the equitable theories of unjust enrichment, resulting trust and constructive trust. She contends trial court erred by granting judgment notwithstanding the verdict, that judicial resolution of disputes arising out of division of property accumulated by unmarried cohabiting couples does not contravene public policy, and that she produced sufficient evidence of an oral contract between the parties to generate a jury issue. Finally, she asserts

she is entitled to a partition of the rural Hartford property.

I. *Did Trial Court Err in Deciding the Equitable Issues?*

At the outset we refer to an issue we are not required to explore extensively in this appeal. Over eight pages of plaintiff's brief are devoted to the proposition that "judicial resolution of disputes arising out of division of property accumulated by unmarried cohabiting couples does not contravene public policy." Plaintiff cites the well-known "palimony" decision, *Marvin v. Marvin,* 18 Cal.3d 660, 557 P.2d 106, 134 Cal.Rptr. 815 (1976), and its progeny spawned in a number of jurisdictions, most of which, unlike Iowa, do not recognize common-law marriages.

Defendant relies on other decisions, including *Hewitt v. Hewitt,* 77 Ill.2d 49, 394 N.E.2d 1204, 31 Ill.Dec. 827 (1979), a case that raises sobering public policy questions relating to property claims and other issues arising from such relationships. Michigan and New York have refused to adopt the entire *Marvin* holding; both limit such actions to enforcement of express contracts and deny judicial approval to any contract that must be implied. *See Carnes v. Sheldon,* 109 Mich.App. 204, 211–17, 311 N.W.2d 747, 752–53 (1981); *Morone v. Morone,* 50 N.Y.2d 481, 486–89, 413 N.E.2d 1154, 1157–58, 429 N.Y.S.2d 592, 595–96 (1980).

We considered a related issue in *Laws v. Griep,* 332 N.W.2d 339, 341 (Iowa 1983), where, in denying an unmarried cohabitant's loss of consortium claim, we wrote:

> The policy of this state is that the *de jure* family is the basic unit of social order. This policy is reflected in statutes governing the right to marry. *See* Iowa Code chapter 595 (1983). It is reflected in the rule recognizing common law marriages. It is demonstrated by statutes defining the rights and responsibilities of husbands and wives toward each other

---

**3.** This practice does not comply with Iowa Rule of Civil Procedure 118. *See Briner v. Hyslop,*

337 N.W.2d 858, 861 (Iowa 1983).

and toward their children. *See, e.g.,* chapters 597 and 598. The policy favoring marriage is not rooted only in community mores. It is also rooted in the necessity of providing an institutional basis for defining the fundamental relational rights and responsibilities of persons in organized society. This policy would be subverted if persons could gain marital legal rights without accepting correlative marital legal responsibilities. We need go no further than this in rejecting plaintiffs' invitation in the present case.

*See also Baldwin v. Sullivan,* 201 Iowa 955, 957–61, 204 N.W. 420, 421–23 (1926) (denying an unmarried cohabitant's right to compensation under the workers' compensation laws). Although in affirming a denial of a claim in probate for services rendered by an unmarried coinhabitant we stated such claims generally are denied, *In re Ballard's Estate,* 252 Iowa 548, 553, 107 N.W.2d 436, 439 (1961), we have allowed recovery when the claimant believed she and the deceased were legally married. *In re Fili's Estate,* 241 Iowa 61, 69–71, 40 N.W.2d 286, 291–92 (1949). *See* Annot., 94 A.L.R.3d 552 (1979).

In this case there are two reasons why we do not believe we are required to confront the basic issue plaintiff raises. First, it apparently was not urged by defendant in district court, and may not have surfaced here had plaintiff not voluntarily raised it. Second, we believe that even if the validity of plaintiff's proposition were conceded, under this record she nonetheless is not entitled to the relief she seeks.

Trial court filed "Findings of Fact, Conclusions of Law and Decree" in adjudicating plaintiff's three equitable claims. Among other facts, the court found the relationship between the parties was limited to their agreement to cohabit together without marriage; there was no substantial evidence of an agreement to share in the costs and expenses of building the house; defendant purchased the real estate and plaintiff refused to sign any of the related documents; defendant proceeded to construct his residence with the help of his friends and co-workers. The court further found "[t]hat the assistance that the plaintiff may have given in the selection, delivery, or application of any materials, like that of the defendant's other friends, was gratuitous and a part of the friendly relationship which then existed between the parties."

Trial court further found defendant furnished all the funds for construction of the house, furnished funds for plaintiff's personal needs, supplied her with various automobiles for her personal use, and paid for her tuition at a cosmetology school and for real estate sales classes. The court found that although plaintiff deposited monies in defendant's checking account, plaintiff withdrew for her personal use funds "far in excess" of those deposited. Further, defendant encouraged plaintiff to open her own savings account for her own funds and the proceeds of the sale of her Des Moines house.

In our de novo review, Iowa R.App.P. 4, we find ample support in the record for each of the above factual findings, and adopt them as our own.

### A. *Unjust Enrichment.*

In *Glass v. Minnesota Protective Life Insurance Co.,* 314 N.W.2d 393, 397 (Iowa 1982), we quoted the following from *Smith v. Stowell,* 256 Iowa 165, 173, 125 N.W.2d 795, 799–800 (1964):

> "Restitution" and "unjust enrichment" are modern designations for the older doctrine of quasi contracts or contracts implied in law, sometimes called constructive contracts. The doctrine rests upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another or to receive property or benefits without making compensation therefor.

*See also Iconco v. Jensen Construction Co.,* 622 F.2d 1291, 1295–96 (8th Cir.1980); Restatement (Second) of Contracts § 4 comment b (1981).

■ We do not perceive this doctrine to invest this court with a roving mandate to sort through terminated personal relation-

ships in an attempt to nicely judge and balance the respective contributions of the parties. Plaintiff argues she "contributed all of her time, money and labor for seven years to help Tom Hammond build a house for the two of them, [thus] was entitled to recover half the value of the Hartford property, under the theory of unjust enrichment."

There is nothing in this record to show that defendant's retention of the house would be unjust or that it would be "inequitable for the defendant to retain the [benefit]," *Key Pontiac, Inc. v. Blue Grass Savings Bank*, 265 N.W.2d 906, 908 (Iowa 1978). Clearly, plaintiff furnished less labor on this project than many of defendant's friends, in whom we would recognize no interest in the real estate. She contributed no capital and took no risk. We agree with trial court that the record discloses "no evidence to show that the defendant profited or enriched himself inequitably or unconscionably at the plaintiff's expense."

B. *Resulting Trust.*

██ There are three situations in which a resulting trust may arise. Restatement (Second) of Trusts, ch. 12 at 323 (1959). Plaintiff classifies her claim as a purchase money resulting trust. Ordinarily such a situation arises when the purchase price of the property is paid by one person and at his or her direction the vendor transfers the property to another. The latter is deemed to hold the property in trust for the person furnishing the consideration. *See United States v. Schroeder*, 242 F.Supp. 430, 433 (S.D.Iowa 1964), *aff'd*, 348 F.2d 223, 228 (8th Cir.1965); *Gregory v. Gregory*, 248 Iowa 672, 674–75, 82 N.W.2d 144, 146 (1957); *Shaw v. Addison*, 239 Iowa 377, 383–84, 28 N.W.2d 816, 820 (1948). The critical time occurs when the legal title to the property is acquired. A resulting trust cannot arise from matters coming into existence afterwards, and the person claiming to be the cestui que trust must occupy such position then as will entitle him or her to be substituted for the grantee. *Gregory*, 248 Iowa at 674, 82

N.W.2d at 146. The plaintiff has the burden to establish all necessary facts with proof that is clear, certain, satisfactory and convincing. *Ross v. Ross*, 256 Iowa 326, 333, 126 N.W.2d 369, 374 (1964); *Gregory*, 248 Iowa at 674, 82 N.W.2d at 146.

Plaintiff argues consideration furnished by the cestui que trust may be only partial, and may be in the form of services, citing Restatement (Second) of Trusts, sections 454 and 455. Those sections, however, indicate that the consideration must flow to the vendor, not to the person taking title. Taking plaintiff's assertions at face value, the situation is that described in section 457 comment b:

Where the transferee pays the purchase price to the vendor, the mere fact that another person subsequently pays the amount of the purchase price to the transferee or agrees to do so is not sufficient to create a resulting trust in his favor, if at the time of the purchase he did not agree to pay the purchase price or any part of it.

██ In this case we find, as did trial court, there was no evidence plaintiff paid or agreed to pay the vendor, and no agreement that she would provide any part of the consideration to anyone. The undisputed evidence is that she refused to sign the note and mortgage for the money to pay for the property, and the purchase price was borrowed and paid by defendant. A resulting trust is an intent-enforcing trust. G. Bogert, *The Law of Trusts and Trustees* § 463 (rev. 2d ed. 1977). Plaintiff's refusal to permit her name to be placed on the deed negates the necessary intent that she was to have an interest in the property. *See Newell v. Tweed*, 241 Iowa 90, 98, 40 N.W.2d 20, 25 (1949) ("Although [plaintiff] knew that the title to the farm had been taken in [defendant's] name she made no demand to have her interest in it conveyed to her ....").

Trial court was right in rejecting plaintiff's claim that a resulting trust arose in the circumstances shown by this record.

## C. Constructive Trust.

 Plaintiff contends she is entitled to a constructive trust equal to an undivided one-half interest in the rural Hartford property. We described this remedy in *Regal Insurance Co. v. Summit Guaranty Corp.*, 324 N.W.2d 697, 704–05 (Iowa 1982):

> A constructive trust is a remedy, applied for purposes of restitution, to prevent unjust enrichment. It is an equitable doctrine. In *Loschen v. Clark*, 256 Iowa 413, 419, 127 N.W.2d 600, 603 (1964), we approved the following definition:
>
> > A constructive trust is a creature of equity, defined ... as a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest. So, the doctrine of constructive trust is an instrument of equity for the maintenance of justice, good faith, and good conscience, resting on a sound public policy requiring that the law should not become the instrument of designing persons to be used for the purpose of fraud.
>
> *E.g.*, Hillman, *Contract Remedies, Equity, and Restitution in Iowa*, § 3.3 at 63–68 (1979); *Restatement of Restitution*, § 160 (1937); 89 C.J.S. *Trusts* § 151 at 1066–68; 76 Am.Jur.2d *Trusts* § 221 at 446.
>
> Constructive trusts fall into three categories: (1) those arising from actual fraud; (2) those arising from constructive fraud (appropriation of property by fiduciaries or others in confidential relationships); and (3) those based on equitable principles other than fraud. *Loschen*, 256 Iowa at 419–20, 127 N.W.2d at 603; Hillman, *supra*, at 64. One seeking the remedy must establish the right by clear, convincing, and satisfactory evidence. *Copeland v. Voge*, 237 Iowa 102, 107, 20 N.W.2d 2, 5 (1945).

The distinguishing feature of the constructive trust is that it arises by construction of the court and ordinarily the result is reached regardless of and contrary to any intention to create a trust. *Westcott v. Westcott*, 259 N.W.2d 545, 547 (Iowa Ct. App.1977).

We agree with trial court's conclusion that plaintiff has produced no clear and convincing evidence showing defendant has enriched himself inequitably or unconscionably at plaintiff's expense. Plaintiff absented herself for months while much of the construction took place. The record reflects she is a bright, aggressive person who followed her own interests and who was fully capable of legally protecting any right she might have asserted in the real estate. It was only after the house virtually was completed and paid for that she presented defendant with a quitclaim deed to sign, conveying to her a one-half interest. Upon his refusal, she continued to live in the house until her occupancy was terminated, whereupon she commenced this action. There is a clear inference in the evidence that the services and benefits these parties conferred upon each other during the course of their cohabitation were gratuitously rendered and extended. We find nothing in this situation that would invoke the conscience of an equity court.

## II. Did Trial Court Err in Granting Defendant's Motion for Judgment Notwithstanding the Verdict?

As we have observed, trial court submitted the claims pled in the first two counts of plaintiff's petition to the jury, although expressing doubt the evidence disclosed any mutuality of obligation or any agreement to share the ownership of the home. The jury's verdict was based upon a finding of an oral contract and trial court then rendered judgment for the defendant. *See* Iowa R.Civ.P. 243(b).

The scope of our review in these circumstances has been stated as follows:

> Our function is to review the evidence to determine ... whether it is sufficient so the trial court was justified in submitting the question to the jury ....
>
> In determining this issue this court views the evidence in accordance with the same principles required for review by the trial court.

*Meeker v. City of Clinton*, 259 N.W.2d 822, 828 (Iowa 1977). These principles were identified in *Winter v. Honeggers' & Co.*, 215 N.W.2d 316, 321 (Iowa 1974):

> [T]he court is required to view the evidence in the light most favorable to the party against whom the motions were made regardless of whether it is contradicted and every legitimate inference that may be fairly and reasonably deducted therefrom must be carried to the aid of the evidence.

"If ... there is substantial evidence in support of each element of plaintiff's claim, the motion ... should be denied. ... Conversely, if there is no substantial evidence ... a directed verdict or judgment notwithstanding the verdict in defendants' favor is appropriate." *Valadez v. City of Des Moines*, 324 N.W.2d 475, 477–78 (Iowa 1982).

■ In light of the above principles, we have examined the record to determine whether plaintiff introduced substantial evidence to prove the following oral contract she alleged in her petition:

> That prior to plaintiff moving to Warren County, Iowa, in 1971, plaintiff and defendant agreed that they would live together, marry, and raise a family. Furthermore it was agreed by the parties that they would both contribute labor and money to the best of their ability for the construction of their "dream home" as above-described.

Assuming that a promise to marry would support a damage action in this state, plaintiff's testimony contradicts this portion of the alleged oral agreement. She testified she did not accept the alleged proposal (which defendant denied) because she "didn't know if [she] was ready."

As for the balance of the oral contract, there was no evidence of any discussion concerning the real estate before plaintiff moved into defendant's home in the town of Hartford. Plaintiff testified that when defendant was considering buying the rural tract in the fall of 1971 he asked her if she "wanted to be in on building a house on it," to which she responded in the affirmative.

Her testimony further shows, however, that in December she refused to sign the note and mortgage or be named as one of the grantees on the deed; she left and was "ready to walk away and forget it." Clearly, this was an abandonment and revocation of any alleged prior agreements.

The most that can be found relating to any subsequent oral agreement is plaintiff's following testimony:

> Q. Did Mr. Hammond indicate by his words or by his conduct what would be required of you if you returned in December 1972? A. We were both to work on the house as much—whatever we could do, that's what our contribution was to be.

A conclusion that could be based only on what defendant "indicated" by his "conduct" hardly can be accepted as substantial evidence of an oral contract. This record, coupled with plaintiff's admission under oath that what she did for defendant and what he did for her "was all part of the love and affection and friendship" that they "had at that time for each other," cannot be accepted as generating a jury question. In these circumstances trial court could have granted defendant's motion for directed verdict and thus committed no error in granting defendant's motion for judgment notwithstanding the verdict.

III. *Should the Partition Action be Dismissed?*

■ Plaintiff's partition action, filed in equity, was based on an alleged agreement for a "joint venture" in the construction of the rural Hartford home. In disposing of the other equitable issues, trial court found that plaintiff did not join defendant in the financial responsibility for the construction cost of the project; there was no substantial facts in the record to show any agreement to share in the costs and expenses of purchasing and constructing the residence.

Departing from the allegations in her petition, plaintiff argues on appeal that she is entitled to partition because the evidence discloses she is entitled to a constructive or resulting trust. We believe trial court's

findings and our discussion in division II preclude relief for plaintiff on the theory of partition.

Inadvertently, trial court did not dispose of this issue, although the cases had been consolidated for trial by the order of a different judge. The consolidated cases must therefore be remanded so that the district court may dismiss the partition action.

We have examined the other arguments advanced by plaintiff in this appeal and find them without merit. The rulings appealed from are affirmed and the combined cases are remanded for the disposition directed in division III.

AFFIRMED AND REMANDED.