# IN THE COURT OF APPEALS OF IOWA

No. 17-1396
Filed September 12, 2018

**BETTY ANDREWS,**
        Plaintiff-Appellant,

**vs.**

**ALICE CARTER, ANTHONY CARTER, CASSIUS ROBINSON,**
**and DENA ROBINSON,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


        Plaintiff appeals the district court decision quieting title to certain real property in defendant Alice Carter.  **AFFIRMED.**



        David L. Leitner of Leitner Law Office, West Des Moines, for appellant.

        Robert Oberbillig and Brian Shea (law student) of Drake Law School Legal Clinic, Des Moines, for appellees the Carters.

        Cassius Robinson and Dena Robinson, Ankeny, appellees pro se.



        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Betty Andrews appeals the district court decision quieting title to certain real property in Alice Carter. We find Ruby Smiley intended for Alice to have present title to the property, without any reservation of control, when she gave Alice a quit claim deed to the property. We also find Betty has not established the right to establish a constructive trust by clear, convincing, and satisfactory evidence. We affirm the decision of the district court.

## I.    Background Facts & Proceedings

Ruby Smiley was the mother of Betty Andrews and Alice Carter. Ruby and her husband, Charlie Smiley, obtained a warranty deed for their home at 1530 16th Street in Des Moines in 1999.

In 2002, Ruby wrote a letter which stated if Charlie did not want to live in the house after she died, he should sell it and split the proceeds between Betty and Alice. In 2005, Ruby wrote another letter, stating the house should go to Charlie on her death, but if he did not want it, the house should be sold and the proceeds split between Betty and Alice. In February 2007, Ruby wrote a document stating Charlie should have two-thirds of the proceeds from the house if she predeceased him.

Ruby and Charlie transferred the property to Alice, for no consideration, by a quit claim deed on March 30, 2007.[1] On August 14, 2008, Alice signed a quit claim deed placing the property in her name and that of Ruby, again for no

---

[1] On October 9, 2007, Alice transferred the property to Jamie Lynn Collier, a relative, by a quit claim deed. Jamie transferred the property back to Alice on December 21, 2007, through another quit claim deed. Alice testified this transfer was to help her obtain financing for a different home she was purchasing.

consideration. Alice testified Ruby asked her to do this because Ruby wanted to receive FEMA assistance with the home. On October 15, 2008, Ruby obtained a mortgage on the home and signed a property lien. On April 16, 2009, Ruby signed a document pertaining to a disaster relief grant as the homeowner of the property.

Ruby and Charlie continued to live in the home until their deaths—Charlie in 2010, Ruby in 2011. On June 14, 2013, Alice transferred her interest in the property to Cassius and Dena Robinson by a quit claim deed for the stated consideration of $12,500.

On January 28, 2016, Betty filed a petition to quiet title, claiming Ruby transferred title to the property to Alice to facilitate management of her assets but intended for the house to be sold at Ruby's death and the proceeds divided equally between Betty and Alice.[2] Betty claimed Alice held the property in a constructive trust. Betty asked the court to set aside the transfer from Ruby to Alice.

During the trial, Alice testified she was the primary caretaker for Ruby, who was ill for a long period of time. According to Alice, "[Ruby] signed the house over to me" and "[Ruby] and her husband were very ill." Alice testified she participated in doing repairs to the house but Ruby never asked her to pay the taxes, utilities, or mortgage on the home, although she paid these expenses after Ruby's death. Alice testified Betty did not help out very much.

Betty testified, "I was at my mother's house almost every day. I helped clean, I cooked." Betty stated, "I would say that Alice was more involved due to proximity." She acknowledged Alice did a greater percentage of the care for their

---

[2] In addition to Alice, the petition named Alice's husband, Anthony Carter, and the later purchasers of the home, Cassius and Dena Robinson, as respondents.

mother. Betty testified Ruby told her, "I put Alice's name on the house, and you guys are going to split it." She stated Ruby often put Betty or Alice's name on bank accounts and other things as a matter of convenience and administration. Betty stated Ruby told her she put Alice's name on the house "[s]o that Alice could help her manage any issues or anything with the house so that Alice would be available to sign it because my mother was extremely ill."

The district found Alice was the primary caregiver for Ruby for many years prior to the conveyance of the house to Alice. The court found Ruby's action in placing other assets in the names of Alice or Betty "does little to shed light on Ruby's intent in executing the 2007 quit claim deed." The court determined Betty did not present sufficient evidence to show Ruby intended for Alice to hold the property for the benefit of Alice and Betty jointly. The court concluded a constructive trust was not warranted and title to the property should be quieted in Alice.

Betty filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) and for a new trial. Alice resisted the motion. The district court denied Betty's post-trial motions. Betty now appeals.

## II. Standard of Review

This case was tried in equity and, therefore, our review is de novo. Iowa R. App. P. 6.907. In de novo review, we "examine[ ] the facts as well as the law and decide[ ] the issues anew." *Brede v. Koop*, 706 N.W.2d 824, 826 (Iowa 2005). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them. Iowa R. App. P. 6.904(3)(g).

### III. Intent of Grantor

**A.** Betty claims Ruby did not intend to transfer legal title of the property to Alice but the 2007 deed was made as a convenience, so Alice could help Ruby in administering her affairs. She points out Ruby remained living in the home and took actions consistent with being the homeowner.

"To effectuate transfer of title under a deed, there must be delivery, actual or symbolical, accompanied with the intention of the grantor to transfer title without any reservation of control." *Orud v. Groth*, 652 N.W.2d 447, 451 (Iowa 2002). "The intent of the grantor is controlling in the matter of delivery and is to be determined by the grantor's acts or words or both." *Id.* "[I]n interpreting a deed the intent of the grantor is the polestar." *Nichols v. City of Evansdale*, 687 N.W.2d 562, 567 (Iowa 2004) (citation omitted). We consider whether the grantor "intended the deed to take effect *as a present transfer of title* . . . ." *Brandt v. Schucha*, 96 N.W.2d 179, 185 (Iowa 1959).

We determine Ruby intended for Alice to have a present title to the property, without any reservation of control, when she gave Alice a quit claim deed to the property on March 30, 2007. In looking at the surrounding circumstances, we note when Ruby wanted to exercise control over the property, she asked Alice to transfer the property to Alice and Ruby, which Alice did on August 14, 2008. After this change to the deed was made, Ruby obtained a mortgage on the home, signed a property lien, and signed a document pertaining to a disaster relief grant as the homeowner of the property. We find the fact Ruby did not take these actions while the title to the property was in Alice's name alone shows Ruby did not believe she

had control over the property after she delivered the quit claim deed to Alice in March 2007.[3]

**B.**     Betty also claims Ruby intended for Alice to hold the property in a constructive trust for the benefit of Betty and Alice after Ruby died. "A constructive trust is a creature of equity, defined . . . as a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest." *Slocum v. Hammond*, 346 N.W.2d 485, 493 (Iowa 1984) (citation omitted). There are three categories of constructive trust: (1) those arising from actual fraud; (2) those arising from constructive fraud; and (3) those based on equitable principles other than fraud. *Id.* The right to a constructive trust must be established by clear, convincing, and satisfactory evidence. *Id.*

We determine Betty has not established the right to establish a constructive trust by clear, convincing, and satisfactory evidence. *See id.* While there was evidence Ruby had previously intended that if Charlie did not want to live in the house after she died the house should be sold and the proceeds divided equally between Betty and Alice, Betty did not present sufficient evidence to show this was Ruby's intent at the time she signed the deed giving Alice title to the property. The evidence showed Alice was Ruby's primary caretaker for many years prior to when Ruby transferred the property to Alice. The district court noted Ruby may have wanted to make sure Alice received the home in consideration of this caregiving.

---

[3]   We also note there is no evidence Ruby objected when Alice transferred the property to Jamie on October 9, 2007, prior to Jamie's return of the property on December 21, 2007.

Betty has not shown Ruby intended for Alice to hold the title as a trustee for the beneficial interest of herself and Betty.

## IV.    Contract

Betty claims the district court improperly found there was a contractual relationship between Ruby and Alice, where Alice would receive the house in payment for taking care of Ruby.  However, the court did not find there was a contractual relationship.  As there was no finding of a contractual relationship, we do not further consider Betty's claim the court improperly found there was a contractual relationship.

We affirm the decision of the district court.

**AFFIRMED.**